UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:06-CR-23-TS |
| | ) | |
| MARLYN J. BARNES, | ) | |
| MICHAEL D. ALEXANDER, | ) | |
| THEODIS ARMSTEAD, | ) | |
| HERBERT HIGHTOWER, | ) | |
| VERNELL A. BROWN, and | ) | |
| MELVIN B. TAYLOR, | ) | |

**OPINION AND ORDER**

This matter is before the Court on motions to sever filed by Defendants Theodis Armstead [DE 209], Vernell A. Brown [DE 210], and Melvin B. Taylor [DE 211]. Armstead, Brown, and Taylor contend that, pursuant to Federal Rule of Criminal Procedure 14, they should be tried separately from Co-Defendant Marlyn J. Barnes.[1]

**BACKGROUND**

On May 24, 2006, the government filed a four-count Indictment. Count 1 alleges that the Defendants conspired from March 21, 2006, until May 5, 2006, to possess with the intent to distribute more than five kilograms of a mixture or substance containing a detectable amount of cocaine. Counts 2, 3 and 4 charge Defendants Barnes, Armstead, and Taylor with possessing a firearm in furtherance of the alleged conspiracy. The Indictment also contains a forfeiture

---

[1] The initial motion for severance indicated that the Co-Defendants also wished to be tried separately from each other. In their reply, the Co-Defendants clarify that they are not asking for four separate trials but expect that they would be tried jointly if their motions are granted.

allegation for a 1992 Cadillac, numerous firearms, bullet resistant vests, and ammunition.

On January 23, 2007, Defendant Barnes made a proffer to federal agents regarding his involvement in or knowledge of the conspiracy charged in the Indictment. He stated that the plan only involved himself and Co-Defendant Herbert Hightower. He also stated that he did not put a "crew" together and that the vest and AK-47 rifle seized during his arrest were his. Barnes stated that Taylor, Brown, and Armstead did not come to Fort Wayne to assist in the robbery. He explained that Taylor has family in Fort Wayne and came to the area frequently. He stated that Taylor had come to Fort Wayne to get his gun back from Barnes. He again stated that only he and Hightower were going to be involved in stealing money and that Taylor, Brown, and Armstead asked if they could steal two kilos of cocaine from the delivery location as they made their way to Ohio.

Barnes did not adopt any of the statements he made in his proffer. However, when the government submitted the proffer to the Defendants on September 19, 2007, during the second day of the joint trial of Barnes, Armstead, Brown, and Taylor, they argued that the statements were exculpatory and that Barnes would testify to the information provided in his proffer. The Court conducted a hearing to determine Barnes' willingness to testify at trial. He stated that if the trial remained a joint trial, he would not testify. He indicated that if his trial was severed from the Co-Defendants, he would testify at their trial consistent with the statement in his proffer regarding Armstead's, Brown's, and Taylor's reasons for coming to Fort Wayne. He affirmed, upon questioning from his counsel, that his testimony would be that "neither Mr. Taylor, Mr. Brown, or Mr. Armstead came to Fort Wayne to assist, in any way, in the allegations contained in the indictment." (Sept. 19, 2007, Tr. 5.) The Court granted a mistrial to give the Defendants

2

Armstead, Brown, and Taylor an opportunity to move to be tried separately from Defendant Barnes.

On October 18, Defendant Armstead moved to sever his trial from Barnes. On October 18 and 23, Defendants Brown and Taylor joined in Armstead's motion and asked the Court to sever their trial for the reasons stated in Armstead's motion.

On November 19, the government responded. The government argues that Barnes' proposed testimony, although perhaps helpful in providing an alternative reason for the other Defendants' trips to Fort Wayne, is not exculpatory regarding their involvement in the conspiracy after they arrived in Fort Wayne. The government also contends that because Barnes' testimony lacks credibility and is vulnerable to significant impeachment, it is not sufficient to overcome the presumptions of joint trials in conspiracy cases. Further, the government argues, the admissibility of Barnes' lone adopted statement is questionable. The government argues that there is no assurance that the Co-Defendants will even call Barnes to testify or that, if called, he will testify if his trial is scheduled to begin after his Co-Defendants' trial. Finally, the government argues that the proposed testimony bears little on the Co-Defendants' theory of defense because they have never disputed that they were in Fort Wayne and testimony regarding why they initially came to Fort Wayne "means absolutely nothing." (DE 216, Gov't Resp. 16) (arguing that the Co-Defendants "could be guilty of the offense if they came here for other reasons but later joined the conspiracy or aided and abetted the conspiracy involving" Barnes and the other Defendants who have pleaded guilty).

On December 4, 2007, Armstead, Brown, and Taylor filed their reply. They argue that the government, in support of its argument that Barnes' testimony is not exculpatory, distorts the

3

testimony that he indicated would be offered at his Co-Defendants' trials. They contend that Barnes indicated during the September 19 hearing that his testimony would be that Armstead, Brown, and Taylor did not come to Fort Wayne to assist in any way with the allegations charged in the indictment—not simply that they came to Fort Wayne for other reasons. The Defendants assert that the government's anticipated evidence against the Defendants and its proposed impeachment evidence are not properly before the Court and should not be considered on a motion to sever. The Defendants reassert, with analysis for each prong of the relevant test, that this is the kind of case where severance is appropriate to allow co-defendants to present the exculpatory testimony of another co-defendant who would not testify at a joint trial. They attach to their response a subpoena issued to Barnes to testify at trial.

## DISCUSSION

"The efficiencies involved in trying members of the same conspiracy together has led to a presumption in favor of a joint trial for coconspirators." *United States v. Williams*, 31 F.3d 522, 528 (7th Cir. 1994) (citing *United States v. Lopez*, 6 F.3d 1281, 1285 (7th Cir. 1993)); *see also United States v. McClurge*, 311 F.3d 866, 871 (7th Cir. 2002) (stating that "[i]n conspiracy cases, 'there is a strong interest in trying defendants who have been jointly indicted in a single trial'") (quoting *United States v. Blassingame*, 197 F.3d 271, 286 (7th Cir. 1999)). "In all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all." *McClurge*, 311 F.3d at 871 (quotation marks omitted).

The Defendants' attempts to rebut this presumption is governed by Rule 14, which allows a court to order separate trials if consolidation "appears to prejudice a defendant." *Williams*, 31

F.3d at 528; Fed. R. Crim. P. 14(a). The Defendants contend that they should be tried separately from Co-Defendant Barnes because it is imperative to their defense that their counsel be able to cross-examination Barnes. Each Defendant believes that he can establish, through the testimony of Barnes, that he was not a member of the charged conspiracy. However, since Barnes cannot be forced to testify against himself at a consolidated trial, Armstead, Brown, and Taylor would not be able to elicit this testimony unless they are tried separately from Barnes.

The inability to take advantage of exculpatory evidence that may be unavailable during a joint trial has been recognized as one of the "classic" situations that can present prejudice sufficient to outweigh the economies of a single trial. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993); *United States v. Thornton*, 197 F.3d 241, 255 (7th Cir. 1999). To obtain a severance on the basis that it is needed to take advantage of exculpatory evidence, the Defendants must show that: (1) Barnes' testimony would be exculpatory; (2) Barnes would in fact testify; and (3) the testimony would bear on his Co-Defendants' cases. *Williams*, 31 F.3d at 528 (citing *United States v. Boykins*, 9 F.3d 1278 (7th Cir. 1993)); *United States v. Tolliver*, 937 F.2d 1183, 1189 (7th Cir. 1991).

The Defendants bear the burden of providing some proof that Barnes would testify in an exculpatory manner. *United States v. Andrus*, 775 F.2d 825, 847 (7th Cir. 1985).

> To justify severance, a defendant must provide some support, such as an affidavit or the existence of recorded testimony, that his codefendant would testify in a manner which would exculpate him. Severance cannot be granted on the basis of a vague, unsupported assertion that a codefendant would testify favorably in a separate proceeding.

*Id.*; *see also Tolliver*, 937 F.2d at 1189.

In this case, Barnes made a proffer to a federal agent on January 23, 2007. In paragraph

5

10 of that proffer, it is recorded that Barnes told the agent that Armstead, Taylor, and Brown did not come to Fort Wayne to assist in the robbery. In a hearing before the Court on September 19, 2007, Barnes testified that if he was tried jointly with his Co-Defendants, he would not testify, but that if the trials were severed, he would take the stand at his Co-Defendants' trials and testify consistent with the first sentence of paragraph 10 of his January 23 proffer regarding the Co-Defendants reasons for coming to Fort Wayne. Upon questioning from his counsel, he acknowledged that his testimony would be that "neither Mr. Taylor, Mr. Brown, or Mr. Armstead came to Fort Wayne to assist, in any way, in the allegations contained in the indictment." (Sept. 19, 2007, Tr. 5.) The Co-Defendants have since subpoenaed Barnes to testify at trial.

The government argues that the testimony is not exculpatory, that there is no guarantee that Barnes will testify, and that the testimony does not bear on the Co-Defendants' cases. The Defendants disagree.

The basis for the government's argument that the evidence is not exculpatory is that it does not foreclose the possibility that, despite their reasons for coming to Fort Wayne, the Co-Defendants later joined the conspiracy. However, this minimizes Barnes' proposed testimony that they did not come to Fort Wayne to assist, in any way, in the allegations contained in the indictment. This implies that they did not, at any point, join the conspiracy. And while an implication is not as strong as an explicit statement that the Co-Defendants never joined the conspiracy, Barnes' proposed testimony is distinguishable from that offered in support of severance in *United States v. Gonzalez*, 933 F.2d 417 (7th Cir. 1991). In *Gonzales*, the defendant seeking severance presented his co-defendants' affidavits, in which they stated that they would

6

testify in a separate trial that the defendant traveled to Chicago on legitimate business during the conspiracy's time frame. 933 F.2d at 425. The proffered testimony did not exclude the possibility that he also traveled to Chicago on drug-related business and did not discuss the particular travel date relied upon by the government to establish guilt. *Id.* (finding that statements would not exculpate the defendant from allegations that he took a trip to Chicago for drug-related purposes). Here, Barnes goes beyond merely asserting that the Co-Defendants came to Fort Wayne during the time frame alleged in the indictment for legitimate reasons, such as to visit family. His statement addresses the very trip that forms the basis of the indictment charges and explicitly states that the trip was not made to engage in the charged illegal activity. The anticipated testimony does more than refute a portion of the government's proof. If believed, it has the potential to exonerate the Co-Defendants because it is entirely inconsistent with the charges that they participated in a conspiracy to possess with the intent to distribute drugs. *Cf. United States v. Magana*, 118 F.3d 1173, 1190–91 (7th Cir. 1997) (holding that proposed testimony from co-defendant that another defendant never supplied him with cocaine did not refute charges for "attempted" distribution and "conspiracy" to distribute). That the government has evidence that the Co-Defendants did engage in the activity charged in the indictment by joining the conspiracy, contrary to Barnes' statement, or that the government can otherwise impeach Barnes' credibility, does not render Barnes' statement non-exculpatory. It is a piece of evidence that the Co-Defendants are entitled to present to a jury as part of a fair trial.

      As to the second factor, the competent evidence before this Court is that Barnes will testify at a trial of his Co-Defendants. He has stated as much under oath in a hearing before this Court. The Co-Defendants have subpoenaed him to testify. The Court anticipates scheduling the

trial of Barnes before the trial of his Co-Defendants. This will address the government's concern that Barnes will refuse to testify if his trial does not come first (because his testimony could then be used against him at his trial).[2]

The third prong is satisfied because Barnes' statements bear on the Co-Defendants' case. They go to the very heart of the charges against them—that they participated in a conspiracy with Barnes and others to possess with the intent to distribute cocaine from on or about March 21, 2006, to May 5, 2006. The Defendants' theory of the case is that they did not become willing and knowing participants in a conspiracy, despite their presence in a hotel room with others who discussed and planned the conspiracy that is charged in the indictment. Barnes' proposed testimony is consistent with this theory.

The Court considers the strong public interest in having co-conspirators jointly indicted tried together, but finds that the Defendants have overcome the presumption in this case.

## CONCLUSION

For the foregoing reasons, the Defendants' Motions for Severance [DE 209, 210 & 211] are GRANTED. The government's case against Defendants Armstead, Brown, and Taylor will be tried jointly. Their trial will be separate from the trial of Defendant Barnes. A telephonic scheduling conference for Defendant Barnes is set for Tuesday, December 11, 2007, at 12:00 PM

---

[2] The Court notes that any concerns Barnes has about incriminating himself if his trial were to proceed second is consistent with the reason for severing trials. *See United States v. McNeal*, 853 F. Supp. 1047, 1050 (N.D. Ill. 1994). This Court agrees with the assessment by the district court in *McNeal* that if Barnes "were willing to waive his Fifth Amendment right and risk incriminating himself, there would be no need to even sever the trial. It would be fully consistent with granting a severance to try the testifying codefendant[s'] case[s] first." 853 F. Supp. at 1050.

before Judge Theresa L. Springmann. The Defendant's attorney, Robert W. Gevers, will call in to the Court at 260-423-3050. A telephonic scheduling conference for Defendants Armstead, Brown, and Taylor is set for , December 12, 2007, at 1:30 PM before Judge Theresa L. Springmann. The Court will initiate the call.

  SO ORDERED on December 7, 2007.

            s/ Theresa L. Springmann
          THERESA L. SPRINGMANN
          UNITED STATES DISTRICT COURT